## BRIGGS & a. v. SHOLES.

If to a plea of usury the replication deny that a greater sum than a sum speci-
fied, "parcel" of that named in the plea, was taken, this is a sufficient statement of the true sum taken.

In an action by the assignee of a mortgage, a replication denying that usury
was taken by a prior holder of the security, may be proved by the affidavit of
such prior holder.

If such affidavit deny merely that more than a sum indicated was received as
"premium or extra interest for procuring the money," it does not support the
replication denying the receipt of such excess "for forbearing and giving day
of payment."

To a plea of usury the replication must deny, in substance, what the statute re-
quires the debtor to deny upon oath, and any omission in this respect is not
helped by the affidavit accompanying it and intended to support it.

WRIT OF ENTRY. The plaintiffs counted upon a mort-
gage made April 10, 1821, by the defendant, to secure the
payment of a note for $1150, to one Alexander Pickens,
and by him assigned, on the 5th day of April, 1826, for
value, to one Nathaniel Cowes, who for a like consideration,
on the 21st of December, 1828, assigned the same to James
H. Bingham, who likewise assigned it, on the 21st of De-
cember, 1839, to Austin Tyler, Timothy Eastman and Or-
mond Dutton, who assigned it to the plaintiffs on the 10th
of February, 1841.

The defendant filed a plea of usury, in which he alleged

that he had paid to James H. Bingham the sum of $548.48 as usury, but did not allege that any excess over and above the legal interest had been secured by the note.

The surviving plaintiff replied " that as to the sum of seventy-five dollars and thirty-one cents, part of the said sum of five hundred and forty-eight dollars and forty-eight cents, which the defendant alleges to have been by him paid to said James H. Bingham for forbearance and giving day of payment of the contents of said promissory note, secured by the plaintiffs' said mortgage, over and above the rate of six pounds for forbearance and giving day of payment of one hundred pounds for one year, he consents that the sum of two hundred and twenty-five dollars and ninety-three cents, treble the said sum of seventy-five dollars and thirty-one cents, may be deducted from the sum lawfully due on said note, in rendering the conditional judgment in said action on the mortgage aforesaid. And as to the remainder of said sum of five hundred and forty-eight dollars and forty-eight cents, he says that no deduction ought to be made in rendering said judgment by reason thereof, because he says that at the time when the said note and mortgage were transferred for a valuable consideration by the said Bingham to the said Tyler, Eastman and Dutton, as in the plaintiffs' said declaration alleged, the said Sholes had knowledge of the said transfer; and he further says that the said Bingham had not at the time of the said transfer received of said Sholes, nor had the said Sholes paid the said Bingham, for forbearing and giving day of payment of the contents of the said note, any more than the said sum of seventy-five dollars and thirty-one cents over and above the rate of six pounds for forbearing and giving day of payment of one hundred pounds for one year, and this he is ready to verify by the oath of said Bingham; wherefore he prays that in rendering the conditional judgment in said action, no larger sum may be deducted from the amount lawfully due on said note than the said sum of two hundred and twenty-

five dollars and ninety-three cents." The replication was signed by the plaintiff, who to sustain it filed two several affidavits of the said James H. Bingham. By one of them it appeared that the defendant was present when the assignment of the mortgage from Bingham to Tyler, Eastman and Dutton was made, and was fully informed that it was being made, and offered no objection, " nor intimated that there was any defence to be made to said note, excepting that it was subject to a balance that might be found due to him, the defendant, on settlement afterwards to be made between him and Bingham, which balance was afterwards indorsed on the note."

In the other affidavit it was stated by Bingham, that the whole amount received by him " as premium or extra interest for procuring the money, did not exceed the sum of seventy-five dollars and thirty-one cents, and that no payment had ever been made and appropriated as interest on said note while in my hands or previous to the settlement between Sholes and me, December 20, 1839, excepting the sum above specified, and that was not indorsed on said note."

To the reception of the replication the defendant objected, assigning the following causes :—

1. Because it is not verified by the oath of James H. Bingham, as required by the statute and practice thereon.

2. Because the sum of $75.31 set forth in said replication, is not set forth as the true sum received by said Bingham.

3. Because the affidavits of said Bingham offered by the plaintiff ought not to be received, not being in compliance with the requisition of the statute.

4. Because if received they do not sustain the allegations and matter set forth in the replication.

5. Because the procedure is in evasion of the statute, and is an attempt to deprive the defendant of the benefit of his plea, by a replication not supported by oath.

6. Because the said Bingham does not come into court where the action is pending, and swear to the truth of the matters set forth in the replication.

*Cushing*, for the plaintiffs.

*Leland*, for the defendant.

WOODS, J.  The mortgage upon which this action is founded, passed through several mesne assignments to James H. Bingham, on the 21st day of December, 1828, who on the same day and month, in 1839, transferred it to parties under whom the plaintiffs claim ; and the defence is that the defendant paid to Bingham $548.48 over and above the legal rate of interest.

The case turns upon points raised upon the replication and the affidavits which accompany it.  The replication begins by conceding that the sum of seventy-five dollars and thirty-one cents, parcel of the $548.48 alleged to have been usuriously paid and received, was so received, and that treble the amount, being two hundred and twenty-five dollars and ninety-three cents, should be deducted from the sum lawfully due on the mortgage.  As to the remainder of the sum of $548.48, he says that no deduction ought to be made, in rendering the conditional judgment, by reason thereof, because he says that at the time when the mortgage was transferred, for a valuable consideration, from said Bingham to Tyler, Eastman and Dutton, as in the declaration alleged, the defendant, Sholes, had knowledge of the transfer; and further, that Bingham had not at that time received of Sholes, for forbearing and giving day of payment of the contents of the note, any more than the sum of seventy-five dollars and thirty-one cents, over and above the rate of six pounds for forbearing and giving day of payment of one hundred pounds for one year, and offers to verify the replication by the oath of Bingham.

One of the affidavits of Bingham proves the notice, as alleged in the replication. The other states that the whole amount received by him " as premium or extra interest for procuring the money did not exceed $75.31, and that no payment had ever been made and appropriated as interest on the note, while in the hands of Bingham, or previous to December 21, 1839, except a sum which was indorsed on the note.

The objections taken to the replication and affidavits may be resolved into four :—

1. The first is, that the true sum taken as usury or unlawful interest is not stated in the replication.

This, if well founded, would seem to be a valid objection, according to the doctrine in *Copeland* v. *Jones*, 3 N. H. Rep. 116. But the true sum unlawfully received seems to be stated or admitted in the replication with sufficient certainty, in and by the averment, that Bingham did not receive more than seventy-five dollars and thirty-one cents, and by the concession that two hundred and twenty-five dollars and ninety-three cents, being treble that sum, might be deducted from the sum justly due on the note, in making up the conditional judgment. There is a clear admission that seventy-five dollars and thirty-one cents were unlawfully paid, and a distinct denial that a larger sum was so paid. When we consider that the plea sets up a claim to a larger sum as forfeited by the usury, and that the replication, in the nature of a bar to the claim, admits a part and denies the remainder, we think the court would be well authorized to render a judgment against the plaintiffs, to the extent of the sum named in the replication, upon the ground that the usury to that amount is fairly admitted.

2. Another objection is to the manner of verifying the replication. This is by the affidavits of Bingham, not annexed to the replication, and not sworn to in open court. It is well settled that the replication may be verified by the oath of the party charged in the plea with having taken the

excessive interest. *Plumer* v. *Drake*, 5 N. H. Rep. 151. And this is in conformity with the statute permitting the creditor to avoid the plea by his own oath, which means, of course, the party who stood in the position of creditor at the time the usury is alleged to have been taken or secured. The statute (N. H. Laws, 1321,) does not precisely point out the manner in which either the debtor or the creditor shall make oath to the facts which constitute their cases respectively, except that it requires the former to " come into court where the cause is to be tried, and offer to make oath," &c., while the creditor is merely required " to swear ;" and the requisition of coming into court is, in his case, wholly omitted.

This omission is important as it regards those who were " creditors," but who have ceased to be such, and have gone beyond the jurisdiction and the reach of the process of the court, and have no interest in the security or the debt supposed to be tainted by the illicit transaction. The right of the debtor to impeach the security by his own oath, exists in all those cases in which the creditor is in a condition to confront the averment by his oath ; and if this were required to be done in open court, it is plain that in most of the instances in which the security has been assigned to third parties, by original creditors who have gone without the jurisdiction, it would not be done at all. We think, therefore, that we should regard the distinction which has been adverted to as made by the statute between creditors and debtors in making the appropriate oaths as a material and significant one, and as affording, in fact, the only protection to an indorsee against whom usury is set up to avoid the security, as in the present case. The affidavit of the payee seems the only mode in which his oath can be procured by the indorsee, who is the plaintiff in the action, without an extraordinary compliance on the part of the former. It seems to satisfy entirely the requisition of the statute. It is the usual manner in which evidence is addressed to the

court, and appears to us, on the whole, an unexceptionable manner in the present case.

3. It is further objected, that the evidence does not sustain the allegations which the replication contains. This objection is well taken. The affidavit of Bingham is to this purport: " The whole amount received by me as premium or extra interest for procuring the money did not exceed the sum of seventy-five dollars and thirty-one cents. And no payment had ever been made and appropriated as interest on said note while in my hands," &c.

It will be seen that the witness does not state, as it is averred in the replication, that " no more than the sum of $75.31 had been paid by or received of Sholes over and above the rate of six pounds for the forbearance and giving day of payment of the contents of said note," &c. But he testifies of money received by him as premium or extra interest for *procuring* the money. This service is a very different thing from forbearing and giving day of payment; and for anything that is contained in the affidavit, the witness might have received other and greater sums for forbearing and giving day of payment. Nor does the affidavit indicate with legal precision the money for the procuring of which the sum named was paid to him; which may even be different money from that named in the replication.

4. But the replication itself is insufficient. The statute provides for the deduction of three times the amount which the debtor shall swear to have been unlawfully taken or secured, " unless the creditor or creditors will swear that he, she or they have not directly or indirectly, willingly taken or received more than after the rate," &c., " and that by the bond, contract, mortgage or assurance, there is not reserved, secured or taken more than after the rate of six per cent. per annum for forbearance or giving day of payment for the money or things sued for or demanded;" or, according to the construction given to the statute in *Copeland* v. *Jones,* if any such excess has been taken or reserved, shall state

---

the amount distinctly and truly. This is what the creditor must swear to, in order to avoid the forfeiture; and this is what the replication should contain. It is not said that no greater excess over and above the legal rate was reserved, secured or taken, in and by the mortgage, &c. This omission is not aided by the affidavit, even should that appear to contain the necessary allegations, since it is the replication on which the defence against the forfeiture is based, and for the verification of which the oath of the party is offered.

In short, the replication should contain a denial of what the statute requires to be denied in order to constitute a bar to the claim for a deduction set up in the plea. The affidavit is allowed merely to prove the replication, and not to supply its omissions. The replication being clearly defective in this respect, is adjudged bad; and as the court will not look to the affidavit except to see whether it supports the replication, it is unnecessary to say whether enough is contained in it to constitute a perfect bar or not. The replication must therefore be rejected for insufficiency, and there must be

*Judgment for the defendant.*